**In re LOEWEN GROUP INTERNA-TIONAL, INC., a Delaware corporation, et al., Debtors.**

No. 99–1244(PJW).

United States Bankruptcy Court,
D. Delaware.

Feb. 19, 2002.

William H. Sudell, Jr., Robert J. Dehney, Eric D. Schwartz, Michael G. Busenkell, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Richard M. Cieri, Charles M. Oellermann, Jones, Day, Reavis & Pogue, Cleveland, OH, Gregory M. Gordon, Jones, Day, Reavis & Pogue, Dallas, TX, for Debtors and Debtors in Possession.

William D. Sullivan, Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, DE, for Thomas and Leslie Harney and O. Wendell Burroughs.

Maureen D. Luke, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Evan D. Flaschen, Patrick J. Trostle, Bingham Dana LLP, Hartford, CT, for the Official Committee of Unsecured Creditors.

Brian A. Sullivan, Werb & Sullivan, Wilmington, DE, for Craig D. Johnson.

Elizabeth J. Austin, Holly G. Gydus, Pullman & Comley, LLC, Bridgeport, CT, for Creditor Roy Martin.

Michael P. Morton, Michael P. Morton, P.A., Wilmington, DE, Daniel J. Carrigan, Piper, Marbury, Rudnick & Wolfe, LLP, Washington, D.C., Kathleen A. Ellis, Tashina Gauhar, Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, MD, for The People's Bank.

Laurie Selber Silverstein, Elihu Ezekiel Allinson, III, Potter, Anderson & Corroon LLP, Wilmington, DE, Barbara L. Ward, Virginia Whitehill Guldi, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P., Washington, D.C., for Michael L. Bigler,

Steven E. Wooddell, Robert E. Evans, James E. DeVol and John F. DeVol.

Michael P. Morton, Michael P. Morton, P.A., Wilmington, DE, Toby L. Gerber, Mark C. Alfieri, Jenkens & Gilchrist, Dallas, TX, for Tecon Corporation and Trousdale Northwest, Inc.

## OPINION

PETER J. WALSH, Chief Judge.

Before the Court are two motions of Loewen Group International, Inc., et al. ("Debtors"). The first is the Verified Motion of Debtors and Debtors–In–Possession for an Order Reducing Certain Claims Asserted or Scheduled in Respect of Promissory Note or other Long–Term Obligations ("Promissory Note Motion") (Doc. # 6006).[1] The second is the Verified Motion of Debtors and Debtors–In–Possession for an Order (A) Reducing Certain Claims that Assert Liabilities in Excess of the Amounts Owed and (B) Fixing the Amounts of Certain Claims that Assert Unliquidated Liabilities (Omnibus Objection No. 19) ("Excess Amounts Motion") (Doc. # 5139).[2] These motions constitute Debtors objections to certain proofs of claim and scheduled claims ("Claims") that

have been asserted or scheduled in respect to Debtors' obligations under either long-term, non-interest bearing, unsecured promissory notes or agreements evidencing long-term, non-interest bearing, unsecured debt obligations (in either case, "Promissory Notes").[3] Each Claim has been asserted or scheduled in an amount equal to the aggregate nominal amount of all outstanding payments due under the applicable Promissory Note as of the date Debtors filed for bankruptcy ("Petition Date"). Some of the Claims also include amounts for post-petition interest, late fees, attorneys' fees and other charges ("Post–Petition Interest, Fees and Charges").[4] Debtors seek entry of an order pursuant to 11 U.S.C. § 502(b)[5] (a) reducing the Claims to present value as of the Petition Date by application of a 9% per annum discount rate; and (b) reducing certain Claims by the amount of any Post–Petition Interest, Fees and/or Charges included therein. For the reasons discussed below, I will grant both motions. However, in light of the fact that Claimants reserved their right to object to the application of a 9% discount factor at the February 5, 2001 hearing on this matter (Tr. of Hr'g (Doc. # 6496) at

1. On March 15, 2001, the Court entered a default order (Doc. # 6644) granting the relief requested in the Promissory Note Motion with respect to claimants that did not oppose the motion. Therefore the motion is now before the Court solely with respect to the claims asserted by Craig D. Johnson, Roy Martin, Thomas and Leslie Harney, O. Wendell Burroughs, Tecon Corporation ("Tecon"), Trousdale Northwest, Inc. ("Trousdale"), and Michael L. Bigler, Robert E. Evans, Steven E. Wooddell, James E. DeVol and John F. DeVol (collectively, the "Takoma Claimants").

2. On October 26, 2000, a default order granting the relief requested in the Excess Amounts Motion was entered with respect to claimants that did not oppose the motion. *See* Order (Doc. # 5560). Therefore, the Excess Amounts Motion is before the Court solely

with respect to claims asserted by The People's Bank ("People's Bank" and collectively with the claimants opposing Debtors' Promissory Note Motion, "Claimants").

3. The Claims are listed in Exhibits A to Debtors' motions.

4. Although non-interest bearing, some of the Promissory Notes provide for the accrual of interest and late fees in the event Debtors fail to pay any installment when due. They also provide for the payment of reasonable attorneys' fees and/or costs incurred by Claimants in connection with their efforts to collect the amounts owed thereunder.

5. 11 U.S.C. §§ 101 *et seq.* is hereinafter referred to as "§ ___".

36–37), the proper discount factor to be applied to calculate the present values of the Claims will be reserved for later determination, absent an agreed upon figure.

## BACKGROUND

Loewen Group International, Inc. ("LGII"), a Delaware corporation, is a wholly-owned subsidiary of The Loewen Group Inc. ("TLGI"), a corporation formed under the laws of British Columbia. LGII is the holding company for TLGI's United States operations. On June 1, 1999, LGII, TLGI and 829 of their direct and indirect subsidiaries and affiliates (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[6] That same date, TLGI and certain of Debtors' Canadian affiliates also commenced insolvency proceedings under the Canadian Companies' Creditors Arrangement Act. Debtors' chapter 11 cases were consolidated for procedural purposes and administered jointly. On December 5, 2001, Debtors' Fourth Amended Joint Plan of Reorganization ("Plan")was confirmed (Doc. # 8671).[7]

Debtors' business operations primarily consist of funeral homes, cemeteries and insurance companies. From the time of their incorporation in 1985 until late 1998, LGII and TLGI developed and maintained a business growth strategy centered on the acquisition and consolidation of independently owned and operated funeral homes, cemeteries and related businesses. Many of Debtors' acquisitions were funded by debt that was either issued to the seller of a business, borrowed from financial institutions, or raised on public debt markets. Most of the Claims to which Debt-

ors object have been asserted or scheduled in respect to Promissory Notes arising out of such acquisitions. These are as follows:

- Craig D. Johnson asserts a Claim in the amount of $125,000 in respect to LGII's obligation under a Promissory Note executed on March 20, 1997 in connection to LGII's purchase of a cemetery from Mr. Johnson and his mother. (Johnson Objection (Doc. # 6313) ¶ 1.) The Promissory Note requires LGII to pay the amount of $125,000, without interest, in five equal annual installments of $25,000 commencing on March 20, 2002. (Id., Ex. A at 2, 5.)

- O. Wendell Burroughs asserts a Claim in the amount of $206,666.46 in respect to a Promissory Note executed by LGII subsidiary Huff–Cook Funeral Home, Inc. on or about January 4, 1993 in connection with its purchase of Mr. Burroughs' business. (Burroughs' Objection (Doc. # 6311) ¶¶ 1–2.) The Promissory Note requires Huff–Cook to pay Mr. Burroughs $463,332.87 in 139 equal monthly installments of $3,333.33, without interest, to be completed by July 4, 2004. (Id., Ex. A.)

- Thomas and Leslie Harney assert a Claim in the amount of $540,000 in respect of a Promissory Note executed by LGII in connection with its purchase of Parks Development Company, Inc. ("Parks"). (Harney Objection (Doc. # 6312) ¶¶ 1, 3.) Pursuant to a share purchase agreement, the Harneys sold all of the stock in Parks to LGII in exchange for a Promissory Note in the principal amount of $810,000.00, payable, without interest, in nine annual installments of $90,000.00. (Id., Ex. A at 1.) LGII made three such

---

6. Five other Debtors filed for chapter 11 relief subsequent to June 1, 1999.

7. Nineteen of the Debtors were not included under the Plan due to unresolved litigation that remained pending at the time the Plan

was filed. Four additional Debtors were not included because they had no impaired class voting to accept the Plan. See 11 U.S.C. § 1129(a)(10).

payments prior to the Petition Date. (*Id.* at ¶ 3.)

● The Takoma Claimants assert Claims in the amount of $160,000 in respect to a Promissory Note executed by LGII in connection with its August 13, 1996 purchase of Takoma Funeral Home, Inc. ("Takoma"). (Takoma Opposition (Doc. # 6655) ¶¶ 2, 4.) In connection with the purchase, LGII paid $975,000 of which $750,000 was paid in cash at closing, a portion was set aside as a hold back, and the remaining $200,000 remained payable in accordance with a Promissory Note executed in favor of the Takoma Claimants, to be paid in ten equal annual installments of $20,000 without interest. (*Id.* at ¶¶ 3–4) As of the Petition Date, $160,000 remained outstanding on the note. (*Id.* at ¶ 4.)

● Tecon and Trousdale each assert two Claims in the amount of $1,650,000.00. (Tecon/Trousdale Resp. (Doc. # 6314) ¶¶ 5–6.) Two of the Claims are in respect to Promissory Notes executed by LGII on June 20, 1996 in connection with its purchase of Associated Memorial Group, Ltd. The other two are asserted in respect to guaranty agreements executed by TLGI in connection with the same purchase. (*Id.*) Under the terms of the Promissory Notes, LGII was required to pay Tecon and Trousdale five equal consecutive annual installments of $550,000.00 each, without interest, beginning on June 20, 1997. (*Id.* at ¶ 4.) Two such payments were made prior to the Petition Date.[8]

The Claims asserted by People's Bank have been asserted in respect to a Promissory Note executed by certain Debtors in connection with the settlement of a $500 million judgment entered against them in 1995. (Bank's Br. (Doc. # 6647) at 1.) This judgment resulted from a lawsuit brought against Debtors LGII, Riemann Holdings, Inc. ("Riemann"), Wright & Ferguson Funeral Home ("W & F"), and TLGI (collectively, "Debtor Defendants") by Jeremiah O'Keefe Sr. and others ("Plaintiffs") for fraud, breach of contract, violations of antitrust laws and other wrongful conduct in connection with the purchase and sale of certain businesses. (*Id.*) While the judgment was on appeal, Debtor Defendants entered into an agreement ("Settlement Agreement") with Plaintiffs to settle the lawsuit for $50 million in cash, $45 million worth of stock, and the execution of a noninterest bearing promissory note ("Note") in Plaintiffs' favor in the principal amount of $80 million. (*Id.* at 2; Settlement Agreement at ¶¶ 5, 12.) In addition, Debtor TLGI executed a guaranty ("Guaranty") of the Note. (Settlement Agreement at ¶ 12.) In 1997, Plaintiffs successfully brought an action to partition the Note and Guaranty with respect to the amounts due between themselves and their counsel. (Bank's Br. (Doc. # 6647) at 2.) Subsequently, on June 24, 1997, Debtor Defendants executed a second Promissory Note ("Replacement Note") and guaranty ("Replacement Guaranty") in the amount of $34,200,000 in favor of Plaintiffs' counsel and/or their successors in interest (collectively, "Payees").[9] (*Id.*) The Replacement Note and Replacement Guaranty provide the basis for the Claims asserted by People's Bank. (*Id.*) The Replacement Note requires Debtor Defendants to make twenty annual payments of $1.8 million to People's Bank, as escrow agent for the Pay-

---

**8.** The Record does not disclose the amount and nature of the Claims asserted by Roy Martin. (Martin Joinder (Doc. # 6361).)

**9.** The Payees include Michael F. Cavanaugh, Diane Cavanaugh as assignee of Michael F. Cavanaugh, Willie E. Gray and the law firm of Gary, Williams, Parenti, Finney, Lewis & McManus, Michael S. Allred, John I. Donaldson, Allred & Donaldson and Halbert E. Dockins, Jr.

ees, on February 1 of each year. (*Id.* at 3.) Prior to the Petition, only two such payments were made. (*Id.*)

The current dispute between Debtors and all Claimants concerns the disagreement as to Debtors' remaining obligations under Claimants' respective Promissory Notes. Debtors argue that the plain language of § 502(b)[10] requires that the Claims be discounted to a present value as of the Petition Date (Debtors' Br. (Doc. # 6503) at 3) and reduced by the amount of any Post–Petition Interest, Fees and Charges included therein (Promissory Note Motion (Doc. # 6006) at 7).[11] Claimants argue that the Claims should be allowed in the full amount asserted. (Burroughs' Objection (Doc. # 6311) ¶¶ 3–6; Harney Objection (Doc. # 6312) ¶¶ 4–6; Johnson Objection (Doc. # 6313) ¶¶ 3–4; Tecon/Trousdale Resp. (Doc. # 6314) ¶¶ 9–13; Bank's Br. (Doc. # 6647) at 1; Takoma Opposition (Doc. # 6655) at 1.)[12]

The relevant facts are not in dispute. Therefore, the only issue before the Court is the proper amount of Claims to be allowed under § 502(b). This issue turns on a determination of (i) whether the Claims

should be discounted to present value as of the Petition Date, and (ii) whether the Claims should be reduced by the amount of any Post–Petition Interest, Fees and Charges included therein.[13]

## DISCUSSION

### I. Discounting the Claims to Present Value as of the Petition Date

Debtors argue that the plain language of § 502(b) requires the Court to discount the Claims to present value as of the Petition Date. I agree. Although Claimants set forth various arguments as to why the Claims should not be discounted, I find these arguments unpersuasive.

### A. Section 502(b)

■■■ Claimants first argue that interpreting § 502(b) to require the discounting to present value of all claims asserted in respect to future liabilities ignores the remainder of the "except" provision of § 502(b) which specifies the circumstances under which a court may discount or reduce a claim. (Bank's Br. (Doc. # 6647) at 3–4[14]; Takoma Opposition (Doc. # 6655)

---

**10.** Section 502(b) provides, in pertinent part:
(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that...

**11.** The Official Committee of Unsecured Creditors (the "Committee") has filed a memorandum supporting Debtors' motions and reiterating Debtors' arguments as to why the Claims should be discounted to present value as of the Petition Date. (Committee's Mem. (Doc. # 6514) at 2–3.)

**12.** Debtors objected to the Claims by their Excess Amounts Motion on September 19, 2000, and by their Promissory Note Motion

on January 3, 2001. The Claimants filed objections to Debtors' motions and oral argument was heard on February 5, 2001. At the conclusion of the hearing, I directed the parties to submit post-hearing briefs on their respective positions and took the matter under advisement.

**13.** The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**14.** Craig Johnson and Roy Martin have joined in People's Bank's response to Debtors' Excess Amounts Motion. (Johnson Objection (Doc. # 6313) ¶ 5; Martin Joinder (Doc. # 6361) at 1–2.) Mr. Martin has also joined in Tecon and Trousdale's response to Debtors' Promissory Note Motion. (Martin Joinder (Doc. # 6361) at 1–2.)

at 3–4.) Claimants contend that because § 502(b) does not expressly provide for the discounting of claims asserted in respect to non-interest bearing promissory notes, the Court may not discount such claims without improperly reading such a requirement into the statute. (Bank's Br. (Doc. # 6647) at 4.) Although Claimants cite no case law in support of this argument, they rely on the portion of § 502(b)'s legislative history which provides:

> Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor. One unarticulated reason for this is that the discounting factor for claims after the commencement of the case is equivalent to the contractual interest rate on the claim. Thus, this paragraph does not cause the disallowance of claims that have not been discounted to a present value because of the irrebuttable presumption that the discounting rate and the contractual interest rate (even a zero interest rate) are equivalent.

H.R. REP. No. 595, 95th Cong., 1st Sess. 352–354 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6307–6310; S. REP. No. 989, 95th Cong.2d Sess. 62–65 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5848–5851. Claimants contend that because nothing in § 502(b) expressly requires that the Claims be discounted to

present value as of the Petition Date, and because there is an "irrebuttable presumption" that the discounting rate and the contractual interest rate are the same, the Court cannot discount the Claims without contravening clear Congressional intent. (Burroughs' Objection (Doc. # 6311) ¶¶ 4–5; Harney Objection (Doc. # 6312) ¶¶ 5–5(sic); Tecon/Trousdale Resp. (Doc. # 6314) ¶¶ 9–10; Bank's Br. (Doc. # 6647) at 3–5; Takoma Opposition (Doc. # 6655) at 3–4.) I disagree.

█ The first step in statutory interpretation is to look to the plain language of the statute itself. *E.g., United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir.1998). Where, as here, a statute is clear and unambiguous, there is no need to resort to the legislative history for interpretive aid. *E.g., United States v. Gonzales*, 520 U.S. 1, 6, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997); *Ron Pair*, 489 U.S. at 241, 109 S.Ct. 1026; *Idahoan Fresh*, 157 F.3d at 202 ("[I]t is presumed that Congress expresses its intent through the ordinary meaning of its language..."). In fact, a court may only look to legislative history in the rare situation in which a literal application of the statute will produce a result that is clearly contrary to Congressional intent. *E.g., Ron Pair*, 489 U.S. at 242, 109 S.Ct. 1026; *Idahoan Fresh*, 157 F.3d at 202. Such a situation is not present in the dispute before me. Therefore, I find Claimants' reference to § 502(b)'s legislative history to be unpersuasive.[15]

---

**15.** In addition, I find Claimants' reliance on the cited portion of legislative history to be misplaced because, when placed in its proper context, it is apparent that this snippet of legislative history specifically refers to the policy of disallowing claims for unmatured interest under *§ 502(b)(2). In re O.P.M. Leasing Services, Inc.*, 56 B.R. 678, 685, n. 4 (

Bankr.S.D.N.Y.1986) (*"O.P.M. I"*). Because § 502(b)(2) is not at issue in this dispute (Tr. of Hr'g (Doc. # 6496) at 33–34; Bank's Br. (Doc. # 6647) at 4, n. 2), the legislative history cited by Claimants provides little guidance as to whether the Claims should be discounted pursuant to § 502(b). Although Claimants argue that other courts have relied upon the

The statutory directive of § 502(b) as it pertains to the Claims is not unclear or ambiguous. Section 502(b) expressly provides that, upon objection to a claim, a Court must "determine the amount of such claim... as of the date of the filing of the petition". 11 U.S.C. § 502(b). Where, as here, a disputed claim has been asserted in respect to future payments due post-petition, this language clearly requires that the claim be discounted to present value as of the petition date. *Id.; see, e.g., In re CSC Industries, Inc.,* 232 F.3d 505, 508 (6th Cir.2000) ("Under 11 U.S.C. § 502(b), the bankruptcy court must, upon objection to a claim, 'determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition.' Therefore, the bankruptcy court must value present claims and reduce claims for future payment to present value..."), *cert. denied, Pension Benefit Guaranty Corp. ("PBGC") v. Belfance,* ── U.S. ──, 122 S.Ct. 50, 151 L.Ed.2d 20 (2001); *In re CF & I Fabricators of Utah, Inc.,* 150 F.3d 1293, 1300 (10th Cir.1998) ("[T]he Bankruptcy Code mandates that all claims for future payment must be reduced to present value."), *cert. denied, PBGC v. CF & I Fabricators of Utah, Inc.,* 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999); *O.P.M. I,* 56 B.R. at 684 ("The discounting of claims to their present value has traditionally been followed when determining the amount of an unearned obligation which is due in the future."). Although Claimants do not appear to dispute the general proposition that § 502(b) requires the discounting to present value of claims asserted in respect to future liabilities, they seem to contend that when such claims have been asserted in respect to promissory notes, the only discount factor that can properly be applied to determine the present value of such claims is the contractual rate of interest contained therein. This argument is unpersuasive.[16]

■ To hold that the contractual rate is the only discount factor that can properly be applied to determine the present value of claims asserted in respect to long-term non-interest bearing promissory notes would ignore the plain language § 502(b) and the economic reality that a certain amount of money received today is worth more than the same amount of money received tomorrow. *See, e.g., Matter of Penn Central Transp. Co.,* 596 F.2d 1102, 1116 (3d Cir.1979) ("Plainly, the promise of a dollar payable in several years is not worth 100 cents today."). Section 502(b) requires the discounting of all claims asserted in respect to future liabilities to account for the time value of money and

---

legislative history of § 502(b) for guidance (Bank's Br. (Doc. # 6647) at 5, n. 3), those courts have done so in the process of explaining why claims for unmatured interest and/or original issue discount are disallowed pursuant to § 502(b)(2). *See In re Public Serv. Co. of New Hampshire,* 114 B.R. 800, 802–03 (Bankr.D.N.H.1990) (holding that original issue discount was in the nature of "unmatured interest" and therefore, must be disallowed under § 502(b)(2)); *In re Allegheny Int'l, Inc.,* 100 B.R. 247, 250 (Bankr.W.D.Pa.1989) (same); *Matter of Baldwin–United Corp.,* 55 B.R. 885, 894 (Bankr.S.D.Ohio 1985). Claimants cite no case in which a court relied upon the cited portion of legislative history to determine the amount of claims similar to the Claims asserted here.

16. Claimants cite two cases, *In re Clausel,* 32 B.R. 805 (Bankr.W.D.Tenn.1983); *In re Watson,* 32 B.R. 491 (Bankr.W.D.Wis.1983), in support of their argument that the Court should apply the zero percent contract rate to discount the Claims. (Harney/Burroughs Br. (Doc. # 6675) at 5.) However, these cases are inapposite. *Clausel* merely cites to the same snippet legislative history cited by Claimants, 32 B.R. at 807, and *Watson* addresses the issue of the proper calculation of an interest rebate under the "Rule of 78's".

foster bankruptcy's objective of treating all similar claims equally. *See In re Winston Mills, Inc.*, 6 B.R. 587, 599 (Bankr. S.D.N.Y.1980) ("A reduction of an award to present value is necessitated by the fact that money presently in hand is always more useful than staggered payments in the future."); *see also CSC Industries*, 232 F.3d at 508; *CF & I Fabricators*, 150 F.3d at 1300; *LTV Steel Co. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.)*, 1996 WL 346010, at *2 (S.D.N.Y. June 24, 1996) ("*Aetna Casualty*") ("[I]n the case of discounting post-petition payments, the claimant receives a sum of money which, if held from the filing date, would, with interest, have equaled the post-petition payments when made. Discounting thus serves the underlying purpose of 11 U.S.C. § 502(b) by treating all claimants equally by fixing the amount of their claims as of the filing date."); *In re O.P.M. Leasing Services, Inc.*, 79 B.R. 161, 167 (S.D.N.Y.1987) ("*O.P.M. II*") ("To assure equality of treatment of creditors at distribution, therefore, the creditor [who, as of the petition date, could claim only a future deprivation of money owed] should be entitled to collect from the debtor only the discounted value of his claim as of the petition date."); *O.P.M. I*, 56 B.R. at 684 ("The language of § 502(b) does not prohibit the mechanism of present valuing claims and it is indeed needed to assure the equal treatment of similarly Code-classified creditors."). By adopting Claimants' argument, the Court would effectively be creating an exception for claims asserted in respect to non-interest bearing promissory notes where one is not otherwise provided for. Such an exception is unwarranted.

Debtors cite a number of cases in which courts have relied on § 502(b) in finding that claims similar to the Claims asserted here must be discounted to present value as of the petition date. *See CSC Industries*, 232 F.3d at 508 (finding that claims asserted in respect of post-petition benefit payments that the PBGC is obligated to make over time to the debtors' employees on the debtors' behalf must be discounted to present value as of the petition date); *CF & I Fabricators*, 150 F.3d at 1300 (same); *LTV Corp. v. PGBC (In re Chateaugay Corp.)*, 126 B.R. 165, 177 (Bankr. S.D.N.Y.1991) ("*Chateaugay II*"), vacated, *LTV Corp. v. PBGC (In re Chateaugay Corp.)*, 1993 WL 388809 (S.D.N.Y.1993) (same); *LTV Corp. v. PGBC (In re Chateaugay Corp.)*, 115 B.R. 760, 769–70 (Bankr.S.D.N.Y.1990) ("*Chateaugay I*"), vacated, *LTV Corp. v. PBGC (In re Chateaugay Corp.)*, 1993 WL 388809 (S.D.N.Y. 1993) (same) [17]; *see also Gas Power Mach. Co. v. Wisconsin Trust Co. (In re Wisconsin Engine Co.)*, 234 F. 281, 284 (7th Cir. 1916) (directing the discounting to present value of claim asserted in respect of payments under three promissory notes that were non-interest bearing until after their

---

**17.** Although the bankruptcy court's orders in *Chateaugay I* and *Chateaugay II* were ultimately vacated by a consent order entered by the District Court approving a settlement agreement between the parties, the fact that these decisions are not binding does not diminish the persuasiveness of the reasoning contained therein. *See In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882, 898 (Bankr.S.D.N.Y. 1993) ("a logical and well-reasoned decision, despite vacatur, is always persuasive authority, regardless of its district or circuit of origin or its ability to bind."); *see also Clarendon Ltd. v. Nu–West Indus., Inc.*, 936 F.2d 127, 129 (3d Cir.1991) ("[A] judicial act by an appellate court, such as vacating an order or opinion of this court or the trial court, is a substantive disposition which can be taken only if the appellate court determines that such action is warranted on the merits. A provision for such action in a settlement agreement cannot bind the court.").

maturity) [18]; *Kucin v. Devan,* 251 B.R. 269, 273 (D.Md.2000) (holding that claims for retirement benefits, asserted in respect of post-petition payments due under non-executory deferred compensation agreements, must be discounted to present value as of the petition date); *Aetna Casualty,* 1996 WL 346010 at *2 (remanding case to the Bankruptcy Court for the discounting of claims asserted in respect to post-petition payments made on pre-petition surety bonds); *In re Thomson McKinnon Sec., Inc.,* 149 B.R. 61, 75–76 (Bankr. S.D.N.Y.1992) (holding that claims asserted in respect to post-petition payments due under deferred compensation agreements must be discounted to present value); *O.P.M. II,* 79 B.R. at 167 (affirming bankruptcy court's decision that damages claim asserted in respect of debtor's reimbursement obligation under equipment lease rejected post-petition must be discounted to present value as of the petition date); *O.P.M. I,* 56 B.R. at 679 (holding that rejection damages claim asserted in respect of debtor's obligation to reimburse claimant-lessee for maintenance payments made post-petition had to be discounted to present value as of the petition date). Claimants argue that these cases are inapposite because none involve claims assert-

ed in respect to long-term, non-interest bearing promissory notes. (Bank's Br. (Doc. # 6647) at 7–8; Harney/Burroughs Br. (Doc. # 6675) at 7.) I find this a distinction without a difference.

The deferred compensation cases are similar to the current situation because they involved claims asserted by employees in respect to payments due post-petition under non-executory deferred compensation agreements. *Kucin,* 251 B.R. at 273; *Thomson McKinnon Securities,* 149 B.R. at 64. Like Debtors obligations under the Promissory Notes, such payments are payable in lump sums, over time and without interest.[19] Similarly, the lease rejection damages cases also involve obligations in the form of lump sum payments due post-petition without interest. *O.P.M. II,* 79 B.R. at 164; *O.P.M. I,* 56 B.R. at 683–86. The fact that the claims for damages constituted claims for reimbursement of payments made post-petition rather than claims for projected post-petition damages is not significant. When viewed from the date of the filing of the debtors' bankruptcy petition, the claims constituted future liabilities which, the courts found, had to be discounted to present value as of the petition date to insure equal treatment of similarly situated creditors. *O.P.M. II,*

---

**18.** Some of the Claimants argue that *Gas Power Machinery* is inapposite because the primary issue in that case was whether or not the three non-interest bearing promissory notes giving rise to the disputed claim were true promissory notes or royalty payments that the debtor was not obligated to pay post-petition. (Bank's Br. (Doc. # 6647) at 9; Harney/Burroughs Br. (Doc. # 6675) at 9.) I disagree. Upon finding that the promissory notes constituted true promissory notes representing the debtor's unconditional obligation to make post-petition payments, the Seventh Circuit remanded the case with directions to allow the claim in an amount equal to the discounted present value of the notes as of the petition date. *Gas Power Mach.,* 234 F. at 284.

**19.** Some of the Claimants attempt to distinguish these cases by arguing that claims asserted in respect to deferred compensation obligations, unlike the Claims asserted here, do not constitute claims asserted in respect to "absolute liabilities" for value already received. (Takoma Opposition (Doc. # 6655) at 6.) I fail to see the distinction. The fact that these payments constitute deferred compensation indicates that the value received by the debtors in exchange for the payments is or will be the employees' work. An employer's liability on *fully vested* deferred compensation claims is just as "absolute" as Debtors' liabilities under the Promissory Notes. In addition, whether or not such liability arises in respect to value already received is irrelevant. *See* discussion *supra,* Part I.A.

79 B.R. at 165 (quoting *O.P.M. I* ); *O.P.M. I*, 56 B.R. at 685 ("These damages, when viewed as of the Filing Date, constitute the deprivation of future benefits... the resulting claim is to be made on the basis of its present value..."); [20] *see also Aetna Casualty*, 1996 WL 346010 at *2 (adopting Judge Lifland's reasoning in *O.P.M. I* in finding that post-petition payments made on pre-petition surety bonds had to be discounted to present value as of the petition date) [21]. This rationale was also adopted by the courts holding that claims asserted by the PBGC in respect to post-petition benefit payments the PBGC was obligated to make to employees on behalf of a debtor-employer must be discounted to present value as of the petition date. *See CSC Industries*, 232 F.3d at 508; *CF & I Fabricators*, 150 F.3d at 1300 ("Inasmuch as those liabilities are for beneficiaries' payments that extend into the future, the amount of the liability must be reduced to present value..."); *Chateaugay II*, 126 B.R. at 177; *Chateaugay I*, 115 B.R. at 770 ("Once the value of the aggregate future liabilities has been determined, the present value of those future liabilities is determined as a matter of bankruptcy law so that all similar claims for future liabilities are treated in an economically similar manner.").[22]

All of these cases involve pre-petition claims asserted in respect to future stream of payments payable post-petition without interest. That is exactly the situation that is currently before the Court. The fact that none of these cases involves claims asserted in respect to non-interest bearing promissory notes is not significant. Nor is the fact that some of these cases involve claims for unpaid post-petition obligations while others involve claims for reimbursement of post-petition payments. *See Aetna Casualty*, 1996 WL 346010, at *2; *O.P.M. II*, 79 B.R. at 166. The rationale for discounting all of these claims is the same-where a claim has been asserted in respect to a future liability of the debtor payable post-petition, the claim must be discounted to present value as of the peti-

---

**20.** Claimants attempt to distinguish the lease rejection damages cases by arguing that the decision to discount the claims was a result of the interplay of §§ 365(g), 502(g) and 502(b) (Takoma Opposition (Doc. # 6655) at 7). I disagree. Together, §§ 365(g) and 502(g) provide that the post-petition rejection of an executory lease constitutes a breach of contract that, for purposes of determining the amount of a claim, will be viewed as have occurred immediately prior to the filing of a petition. However, § 502(b) remains the provision which requires that a claim for such damages be discounted to present value as of the petition date.

**21.** Some Claimants incorrectly attempt to distinguish *Aetna Casualty* on the ground that the claim discounted in that case was asserted in respect to a *"projected* future liability". (Takoma Opposition. (Doc. # 6655) at 6.) In fact, *Aetna Casualty* involved a claim for reimbursement in respect of post-payments that claimants had already made on the debtor's behalf. 1996 WL 346010 at *1.

**22.** Claimants attempt to distinguish the PBGC cases by arguing that the Employee Retirement Income Security Act ("ERISA"), and not the Bankruptcy Code, requires discounting in such cases. (Takoma Opposition (Doc. # 6655)at 6.) While it is true that ERISA contemplates the use of a discount factor in such situations, discounting is also required by the Bankruptcy Code. 11 U.S.C. § 502(b); *see, e.g., CSC Industries*, 232 F.3d at 508 ("[T]he bankruptcy court must value present claims and reduce claims for future payment to present value, while also keeping in mind that a fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally."); *CF & I Fabricators*, 150 F.3d at 1300 ("The Bankruptcy Code mandates that all claims for future payment must be reduced to present value."); *Chateaugay I*, 115 B.R. at 769 ("Clearly '[t]he Bankruptcy Code controls the allowance of claims including those arising under ERISA.' "), *quoting In Re Columbia Motor Express, Inc.*, 33 B.R. 389, 394 (M.D.Tenn.1983).

tion date. *See, e.g., CF & I Fabricators*, 150 F.3d at 1300; *Aetna Casualty*, 1996 WL 346010 at *2; *O.P.M. II*, 79 B.R. at 165; *Chateaugay I*, 115 B.R. at 770; *O.P.M. I*, 56 B.R. at 685.

Some of the Claimants argue that their Claims do not constitute future liabilities of Debtors as of the Petition Date and therefore, as asserted, their Claims represent the present value of Debtors' liabilities. (Harney/Burroughs Br. (Doc. # 6675) at 3–4.) This argument is premised on the incorrect assumption that the unpaid principal balances of the Promissory Notes were accelerated prior to or on the Petition Date.[23] (*Id.*) They were not. While some of the Claimants contend that the unpaid principal balances were accelerated under the terms of the Promissory Notes, (Harney/Burroughs Br. (Doc. # 6675) at 2–4, 7; Tecon/Trousdale Resp. (Doc. # 6314) at ¶¶ 4–5, 13), others argue that the principal amounts of the Promissory Notes were accelerated by operation of law upon the commencement of Debtors chapter 11 case. (Harney/Burroughs Br. (Doc. # 6675) at 3–4.) To the extent Claimants argue that the debt was accelerated pursuant to the terms of their Promissory Notes, this argument is incorrect. Each of the Promissory Notes provides that the Claimant may only declare the principal amount immediately due and owing after such Claimant has provided Debtors with written notice of default *and* an opportunity to cure. No such notice was received by Debtors prior to the Petition Date. In fact, no such notice could have been received by Debtors pre-petition because Debtors did not fail to pay any installments due under any of the Promissory Notes until after the Petition Date. At

that point, Claimants could not have provided Debtors with notice of default because such post-petition notice would have constituted a violation of the automatic stay. 11 U.S.C. § 362.

■ Although it is true, as Claimants argue, that the commencement of Debtors chapter 11 case operates to accelerate all unmatured claims against a debtor, (Harney/Burroughs Br. (Doc. # 6675) at 3–4), it does not follow that such acceleration negates the requirement that the accelerated principal balances under the Promissory Notes be discounted to present value pursuant to § 502(b). As Debtors argue in their Consolidated Reply Brief (Doc. # 6733 at 13), the concept of acceleration in the context of the commencement of a chapter 11 case is nothing more than a corollary of the principle embodied in § 101(5)'s definition of "claim" as "any right to payment, whether or not such right is... matured [or] unmatured" (Debtors' Reply (Doc. # 6733) at 13–14). 11 U.S.C. § 101(5). A "claim" as defined in § 101(5) differs from an "allowed claim" which must be determined in accordance with § 502(b). Although § 101(5)'s definition of "claim" permits a creditor to assert a claim against the debtor for all amounts owed to him as of the petition date, even if such amounts are unmatured, § 502(b) provides that such claim will only be allowed to the extent the court determines those amounts "as of the date of the filing of the petition". 11 U.S.C. §§ 101(5), 502(b); *see also O.P.M. I*, 56 B.R. at 684 ("Any valuation of a claim is necessarily embodied in § 502(b) so that the amount of the claim to be allowed in the reorganization or liquidation proceedings is proper-

---

**23.** In making this argument, Claimants also incorrectly contend that all of the cases cited by Debtors in support of the argument that the plain language of § 502(b) requires that the Claims be discounted are distinguishable

because "none of those situations involve the acceleration of the principal debts under a promissory note as in the present case". (Harney/Burroughs Br. (Doc. # 6675) at 7–8.)

ly ascertained."). Therefore, although Claimants were permitted to assert claims in an amount equal to the entire unpaid principal balance of the Promissory Notes pursuant to § 101(5), § 502(b) requires that they be discounted to present value as of the Petition Date. Claimants argument to the contrary is nothing more than an extension of their argument that the only discount factor than can properly be applied to discount claims asserted in respect to non-interest bearing promissory notes is the contractual rate of interest.[24]

### B. The Value Received By Debtors Is Irrelevant

■ Some of the Claimants also argue that discounting the Claims would be inappropriate because Debtors have already received the entire value evidenced by the Promissory Notes. (Bank's Br. (Doc. # 6647) at 5–7); (Takoma Opposition (Doc. # 6655) at 4–5.) This argument is premised on the contention that each of the businesses and the lawsuit settlement conveyed to Debtors in exchange for the Promissory Notes had a specific agreed-upon value or purchase price equal to the nominal face value of the applicable Promissory Note. (Bank's Br. (Doc. # 6647) at

5–6; Takoma Opposition. (Doc. # 6655) at 4–5.) Claimants contend that because at the time of the sales/settlement, the value received by Debtors was equal to the Promissory Notes' stated principal amounts, the Promissory Notes constitute "absolute liabilities". (Bank's Br. (Doc. # 6647) at 5–7.) As such, Claimants argue, discounting is not appropriate to reduce the principal amounts of the Promissory Notes absent evidence that the value received by Debtors at the time of the sales/settlement was actually less than the stated principal amounts of the Promissory Notes. (*Id.;* Takoma Opposition (Doc. # 6655) at 4–5).[25] I disagree.

In my opinion, the value received by Debtors in exchange for the executed Promissory Notes is completely irrelevant to the issue of whether the Claims should be discounted to present value as of the Petition Date. Regardless of whether Debtors paid too much or too little in exchange for a business or to settle a lawsuit, Debtors' outstanding obligations under the Promissory Notes constitute future liabilities as of the Petition Date which must be discounted to present value under § 502(b). The fact that these liabilities are "absolute" has no bearing on

24. All of the cases cited by Claimants in support of this argument are inapposite because the primary issue involved in those cases was whether the asserted claims included amounts for unmatured interest. In addition, the portion of text cited to in the majority these cases merely quote the same snippet of legislative history relied upon by Claimants in arguing that the only discount rate that should be applied to the Claims is the contractual rate of interest. *See In re McMurray,* 218 B.R. 867, 871 (Bankr.E.D.Tenn.1998) (quoting legislative history of § 502(b)(2)); *In re Hardware,* 189 B.R. 273, 279 (Bankr. E.D.N.Y.1995) (same); *In re New Valley Corp.,* 168 B.R. 73, 78 (Bankr.D.N.J.1994) (same); *In re Republic Fin. Corp.,* 47 B.R. 766, 770 (Bankr.N.D.Okla.1985) (same); *Clausel,* 32 B.R. at 807–08 (same); *see also Watson,* 32 B.R. at 493 (finding that creditor's use of

"Rule of 78's" in determining interest rebate due to debtor as of petition date did not result in impermissible charge for *unmatured interest* ); *In re Oahu Cabinets, Ltd.,* 12 B.R. 160, 162 (Bankr.D.Haw.1981) (quoting Collier).

25. Claimants cite to three cases in support of this argument. (Bank's Br. (Doc. # 6647) at 6–7; Takoma Opposition (Doc. # 6655) at 7.) However, these cases are inapposite because all involved claims asserted in respect to obligations that either provided for interest at a stated rate and/or included original issue discount. *See In re I.C.H. Corp.,* 219 B.R. 176 (Bankr.N.D.Tex.1998); *In re Mt. Rushmore Hotel Corp.,* 146 B.R. 33 (Bankr.D.Kan.1992); *In re Public Service Co. of New Hampshire,* 114 B.R. at 800.

whether the Claims should be discounted under § 502(b). Although Claimants contend that discounting the Claims would be inequitable because it will have the effect of reducing the originally agreed-upon purchase/settlement price and Claimants will receive less than what they bargained for, I disagree. In each of the transactions between Debtors and Claimants, part of the parties' economic agreement was that Claimants would receive regular payments over time without interest. Thus, the actual value of what Claimants bargained to receive under the terms of the Promissory Notes is less than the stated principal amount. *See Winston Mills,* 6 B.R. at 599; *Penn Central,* 596 F.2d at 1116. Discounting the Claims as required by § 502(b) does not have the effect of depriving Claimants of the benefit of their bargain. Rather, it enables Claimants to pursue now exactly what they would have received had they been paid outside of the context of bankruptcy in accordance with the terms of the Promissory Notes.

## C. Claims Asserted in Respect to Guarantees

■ In addition to the arguments discussed above, Tecon and Trousdale also argue that the Claims they have asserted in respect to guaranty agreements ("Guarantees") executed by TLGI in connection with their Promissory Notes cannot be discounted because "the Guarantees represent a sum certain and contain no reference to any interest rate". (Tecon/Trous-

dale Resp. (Doc. # 6314) ¶ 13.) Pursuant to the Guarantees, TLGI "unconditionally, irrevocably and absolutely, guarantee[d] . . . that all obligations and indebtedness evidenced by or provided in the [Promissory] Note[s] would be promptly paid when due and in accordance with the terms thereof". (Guarantees at ¶ 1.) Tecon and Trousdale contend that once LGII "defaulted" under the terms of the Promissory Notes, the Guarantees mandated automatic payment of the full principal balance thereof and therefore, the Claims asserted in respect to the Guarantees cannot be discounted under § 502(b).[26] (Tecon/Trousdale Resp. (Doc. # 6314) ¶¶ 4–5, 13.) I disagree.

Under terms of the Guarantees, TLGI is only obligated to pay any past-due installments under the Promissory Notes "when such indebtedness becomes due", and if the obligation arises, TLGI is only required to "pay the amount due theron". (Guarantees at ¶ 5.) The only way TLGI could have become obligated to pay the entire principal balance due under the Promissory Notes, is if Tecon and Trousdale exercised their powers to accelerate the Notes prior to the Petition Date. (*Id.*) However, Tecon and Trousdale did not do so.[27] In addition, LGII did not default in the payment of any of the installments due under the Promissory Notes until after the Petition Date. (Tecon/Trousdale Resp. (Doc. # 6314) ¶ 5.) Therefore, TLGI had no obligation to perform under the Guarantees until post-petition. As such, the

---

**26.** The Guarantees also provide in pertinent part:

  *　　　*　　　*　　　*　　　*　　　*

5. *Payment and Performance of Obligations.* In the event of default by Purchaser in payment or performance of the Guaranteed Indebtedness, or any part thereof, when such indebtedness becomes due, either by its terms or as the result of the exercise of any power to accelerate, Guarantor shall, without notice or

demand . . . pay the amount due thereon to Seller . . .

**27.** As discussed above, the principal balances were not accelerated under the terms of the Promissory Notes prior to the Petition Date because Claimants' rights to accelerate the principal were conditioned upon providing Debtors with prior notice and an opportunity to cure which Claimants never did. (Tecon/Trousdale Resp. (Doc. # 6314) ¶ 5, n. 1.)

Claims Tecon and Trousdale assert in respect to TLGI's obligations under the Guarantees constitute claims asserted in respect to future liabilities which must be discounted to present value as of the Petition Date pursuant to § 502(b). 11 U.S.C. § 502(b); *see also CSC Industries*, 232 F.3d at 508; *CF & I Fabricators*, 150 F.3d at 1300; *O.P.M. I*, 56 B.R. at 684.

I find the case law addressing the issue of guarantor-debtor liability in the context of determining the amount of a claim to be allowed under § 502(b)(6)[28] to be instructive in this regard. *See, e.g., In re Episode USA, Inc.*, 202 B.R. 691, 695–96 (Bankr.S.D.N.Y.1996) (finding that § 502(b)(6) limits claim of landlord against guarantor-debtor); *In re Farley, Inc.*, 146 B.R. 739, 745 (Bankr.N.D.Ill.1992) (same); *In re Revco D.S., Inc.*, 138 B.R. 528, 532 (Bankr.N.D.Ohio 1991) (same); *In re Rodman*, 60 B.R. 334, 334–35 (Bankr. W.D.Okla.1986) (same). The issue in these cases was whether the cap provided for in § 502(b)(6) limiting claims asserted in respect to a lessee's lease termination damages applied when the debtor was a guarantor. In each of these cases, the courts reasoned that although § 502(b)(6), on its face, provided no guidance as to whether the provision applied when the debtor was a guarantor, a finding that § 502(b)(6) did apply in such situations served the stat-

ute's purpose of limiting a lessor's claim for damages to prevent one creditor from consuming the debtor's entire estate. *Episode USA*, 202 B.R. at 695–96; *In re Farley, Inc.*, 146 B.R. at 745; *In re Rodman*, 60 B.R. at 334–35; *In re Revco*, 138 B.R. at 531–32; *but see, e.g., In re Danrik, Ltd.*, 92 B.R. 964, 972 (Bankr.N.D.Ga.1988) (holding that § 502(b)(6) does not literally apply to limit claims of landlord against guarantor-debtor, and that the equities of the case weigh against limiting the claim). In *In re Farley*, the Court stated:

> For the purposes of applying § 502(b)(6) to a landlord's claim, it is not legally relevant whether the debtor is defined as "tenant" or as "guarantor" of the lease. Section 502(b)(6) does not explicitly limit claims of a landlord against lease guarantors. The statutory language only limits the claim of a "lessor for damages from the termination of a lease." However, reading into this provision a distinction between tenants and guarantors is unwarranted, since either tenant or guarantor can be liable for "damages from the termination of a lease." From the language of § 502(b)(6), it is apparent that it is equally applicable to lessees and guarantors.

146 B.R. at 745, *citing Oldden v. Tonto Realty Corp.*, 143 F.2d 916, 921 (2d Cir. 1944) ("the guaranty is a secondary obli-

---

**28.** Section 502(b)(6) provides in pertinent part:

  \*    \*    \*    \*    \*    \*

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—

  \*    \*    \*    \*    \*    \*

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds-

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

gation, it must be subject to the same limitations as the primary"); *Matter of Interco, Inc.,* 137 B.R. 1003, 1005–06 (Bankr.E.D.Mo.1992) ("The purpose of § 502(b)(6) is to compensate the landlord fairly while protecting other creditors. This rationale is applicable whether the debtor is the tenant or the guarantor of the lease"). Here too, § 502(b)'s purpose of assuring the equal of treatment of similarly-situated creditors will be served by limiting claims asserted against debtor-guarantors in the same manner as claims asserted against debtor-obligors. I can see no reason why a guarantor-debtor's obligation on a claim as determined under § 502(b) should be any greater than the underlying obligation of the debtor-obligor. Similar to Tecon and Trousdale's Claims against LGII, their Claims against TLGI are claims against a debtor which must also be determined "as of the date of the filing of the petition" under § 502(b). 11 U.S.C. § 502(b). Therefore, those Claims should also be discounted to present value as of the Petition Date. *Id.; see, e.g., CSC Industries,* 232 F.3d at 508; *CF & I Fabricators,* 150 F.3d at 1300; *O.P.M. I,* 56 B.R. at 684.

For the reasons discussed above, I find that all of the Claims must be discounted to present value as of the Petition Date.[29]

## II. Post–Petition Interest, Fees and Charges

■ Debtors have also objected to the Claims to the extent that they include amounts for Post–Petition Interest, Fees and/or Charges. Debtors argue that the Claims should be reduced by the amount of any Post-petition Interest included therein because claims for "unmatured interest" are not allowable under § 502(b). (Tr. of Hr'g (Doc. # 6496) at 30.) Debtors also argue that the Claims should be reduced by the amount of any Post–Petition Fees and Charges included therein because post-petition late fees, attorneys' fees and other charges are not recoverable by unsecured creditors.[30] (*Id.* at 30–31.) Although Tecon and Trousdale respond to these arguments by stating that "most courts find that interest may continue to accrue against debts that have not been discharged in the debtor's bankruptcy" (Tecon/Trousdale Resp. (Doc. # 6314) ¶ 11), I find this response to be irrelevant. For this reason, and the reasons discussed below, I agree with Debtors and find that the Claims must be reduced by the amount of any Post–Petition Interest, Fees and/or Charges included therein.[31]

■ As a general matter, unsecured creditors are not entitled to recover inter-

---

29. Some of the Claimants have also argued that the Claims should not be discounted because the application of a discount factor is only appropriate to eliminate claims for unmatured interest (Harney/Burroughs Br. (Doc. # 6675) at 4–5.) In light of the plain language of § 502(b) and the significant number of cases in which courts have held that claims asserted in respect to streams of payment payable post-petition *without interest* must be discounted to present value as of the petition date, Claimants' argument is unpersuasive.

30. Although all of the Claimants had several opportunities to respond to these arguments, only Tecon and Trousdale have done so.

31. As a preliminary matter, it difficult for the Court to determine on what legitimate basis Tecon and Trousdale assert that interest "may continue" to accrue on the Claims during the pendency of Debtors' bankruptcy. The Promissory Notes giving rise to the Claims are non-interest bearing. Contrary to Claimants' suggestion (Tecon/Trousdale Resp. (Doc. # 6314) ¶ 13), the Court's decision to discount the Claims to present value as of the Petition Date does not "imply an interest component" into the Promissory Notes or Guarantees on which the Claims are based. In addition, because Debtors' failure to pay any installments due under the Promissory Notes first occurred post-petition, interest could not begin accruing on the past-due installments until after the

est that accrues on their claims after the filing of a bankruptcy petition. 11 U.S.C. §§ 502(b)(2)[32], § 506(b)[33]; *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 372–73, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988) ("Since [§ 506(b) ] permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest."); *Chemical Bank v. First Trust of New York (In re Southeast Banking Corp.),* 156 F.3d 1114, 1119 (11th Cir.1998); *In re Lapworth,* 1998 WL 767456 at \*2 (Bankr. E.D.Pa. Nov.2, 1998) ("Pursuant to § 502(b)(2), unsecured creditors are generally not entitled to receive post-petition interest on their claims."); *In re Woodmere Investors, Ltd. P'ship,* 178 B.R. 346, 355 (Bankr.S.D.N.Y.1995) ("Case law and section 506(b) of the Bankruptcy Code make it clear that post-petition interest is not permitted unless [insurer] is an oversecured creditor."). This rule avoids the administrative inconvenience of continuous recomputation of claims, and prevents certain creditors from profiting at the expense of others solely as a result of the delay in post-petition repayment caused by

operation of law. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946); *see also Bruning v. United States,* 376 U.S. 358, 363, 84 S.Ct. 906, 908–09, 11 L.Ed.2d 772 (1964) ("The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience."). Although, as Tecon and Trousdale argue, some courts have been willing to make an exception to this general rule where an unsecured creditor's claim is not discharged in the debtor's bankruptcy, *see Bruning,* 376 U.S. at 363, 84 S.Ct. 906 (holding that taxpayer remained personally liable for post-petition interest on unpaid tax debt that was not discharged in taxpayer's bankruptcy); *Kitrosser v. CIT Group/Factoring, Inc.,* 177 B.R. 458, 468 (S.D.N.Y. 1995) (holding non-debtor owners of former chapter 11 debtor-corporations liable to creditor for post-petition interest on guarantees of corporate debt where corporations' underlying bankruptcy actions were dismissed without discharge of corporations' debt), this exception is inapplicable to the instant case.[34] Here, the Claims

---

Petition Date. To the extent Claimants' argue that they are entitled to recover interest accruing on account of the post-petition default, I disagree and find that Claimants are not entitled to such interest because their Claims are unsecured.

**32.** Section 502(b)(2) provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—

  \*    \*    \*    \*    \*    \*

(2) such claim is for unmatured interest . . .

**33.** Section 506(b) provides in pertinent part:

(b) To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

**34.** An additional exception exists where the debtor is found to be solvent. *See, e.g., Timbers,* 484 U.S. at 379, 108 S.Ct. 626; *Chemical Bank,* 156 F.3d at 1119, n. 7. However, this exception *is* also inapplicable.

have not been determined to be non-dischargeable.[35] Therefore, allowing Claimants to recover post-petition interest the Claims would conflict with the considerations underlying the general rule denying post-petition interest to unsecured creditors. Allowing Claimants to recover post-petition interest would benefit Claimants at the expense of other unsecured creditors who will not recover the full amount of their claims. Such a result is contrary to the principle that similarly-situated creditors be treated equally. Therefore, I find that Claimants, as unsecured creditors, are not entitled to recover Post–Petition Interest.

■ For similar reasons, I also find that Claimants are not entitled to recover Post–Petition Fees and Charges. Section

506(b) provides that post-petition fees and costs may only be recovered "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim". 11 U.S.C. § 506(b). Thus, like post-petition interest, post-petition fees and costs may only be recovered by creditors to the extent their claims are oversecured. *See, e.g., In re Woodmere,* 178 B.R. at 356 ("Section 506(b) does not distinguish between interest rates and attorney fees."); *In re Saunders,* 130 B.R. 208, 214 (Bankr. W.D.Va.1991); *In re Sakowitz, Inc.,* 110 B.R. 268, 275 (Bankr.S.D.Tex.1989); *In re Canaveral Seafoods, Inc.,* 79 B.R. 57, 58 (Bankr.M.D.Fla.1987); *In re Mobley,* 47 B.R. 62, 63 (Bankr.N.D.Ga.1985).[36] Be-

**35.** The Plan, confirmed by order of this Court on December 5, 2001, expressly provides for the discharge and release of all Claims, along with any interest accrued thereon subsequent to the Petition Date. (Plan at Art. XI.A., ¶ 1.)

**36.** Although other courts have held that an unsecured or undersecured creditor may recover post-petition fees as part of a claim if the agreement under which the claim arose provides for their recovery, *see, e.g., Liberty Nat'l Bank & Trust Co. v. George,* 70 B.R. 312, 316–17 (W.D.Ky.1987); *In re Ladycliff College,* 46 B.R. 141, 142–43 (Bankr.S.D.N.Y. 1985); *In re Byrd,* 192 B.R. 917, 919–20 (Bankr.E.D.Tenn.1996); *see also In re United Merchs. and Mfrs., Inc.,* 674 F.2d 134, 137–39 (2d Cir.1982) (deciding under Bankruptcy Act, but discussing § 506(b)), I disagree. Although a contractual provision providing for the recovery of attorneys' fees and costs may enable an unsecured creditor to pursue recovery of such fees and costs in an action in state court, in the context of bankruptcy, the creditor's right to assert such claims is limited by the provisions of the Bankruptcy Code.

The only provision in the Bankruptcy Code addressing the issue of recovery of post-petition fees and costs is § 506(b). As discussed above, § 506(b) expressly limits the recovery of such fees and costs to creditors whose claims are oversecured. 11 U.S.C. § 506(b). Although Congress could have also provided for the recovery of post-petition fees and costs

by unsecured and undersecured creditors, it failed to do so. Rather than view this failure as mere oversight, I think it is more reasonable to interpret the language in § 506(b) limiting the recovery of post-petition fees and costs to oversecured creditors as demonstrative of Congressional intent not to allow the recovery of post-petition fees and costs by creditors whose claims are not oversecured. *See, e.g., Saunders,* 130 B.R. at 210 ("If Congress had intended for the holders of both secured claims and unsecured claims to recover attorneys' fees, it could have easily said so."); *Sakowitz,* 110 B.R. at 272 (applying the doctrine of *espresso unius est exclusio alterius* (a maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another) to reach the same conclusion).

I find further support for this conclusion in the Supreme Court's decision in *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In *Timbers,* the Supreme Court concluded that because § 506(b) "permits post-petition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing post-petition interest". 484 U.S. at 372–73, 108 S.Ct. 626. This rationale applies equally to claims for post-petition fees and costs. *In re Woodmere,* 178 B.R. at 356 ("If no 'security cushion'

cause here the Claims are not oversecured, Claimants are not entitled to recover Post–Petition Fees and Charges. Therefore, I find that the Claims must be reduced by the amount of any Post–Petition Fees and/or Charges included therein.

## CONCLUSION

For the reasons stated above, Debtors' Promissory Note Motion (Doc. # 6006) is granted with respect to all Claims, and Debtors' Excess Amounts Motion is granted with respect to the Claims asserted by People's Bank. The Claims shall be reduced by the amount of any Post–Petition Interest, Fees and/or Charges included therein and discounted to present value as of the Petition Date. The determination of the proper discount factor to be applied to calculate the present value of the Claims is reserved for later hearing upon an appropriate motion, absent an agreed upon factor.

exists to allow for post-petition interest, none exists for the allowance of attorneys' fees and costs."). Although one court has rejected the decision of *In re Woodmere* and distinguished *Timbers* by arguing that contrary to the situation involving post-petition interest, there is no general rule disallowing claims for post-petition attorneys fees and costs set forth in § 502(b), *Byrd* 192 B.R. at 919, I find this argument to be unpersuasive. If post-petition fees and costs were generally recoverable by all creditors, then Congress would not expressly provided for their recovery by oversecured creditors in § 506(b).