*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0393P (6th Cir.)
File Name: 00a0393p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: CSC INDUSTRIES, INC.
& COPPERWELD STEEL
COMPANY,

        *Debtors.*

    No. 99-4243

———————————

PENSION BENEFIT GUARANTY
CORPORATION,

        *Appellant*,

    *v.*

KATHRYN A. BELFANCE,
Trustee, the Copperweld Steel
Company Liquidation Trust,

        *Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 99-00041—Peter C. Economus, District Judge.

Argued: September 12, 2000

Decided and Filed: November 17, 2000

Before:  JONES, RYAN, and CLAY, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:**    Israel Goldowitz, PENSION BENEFIT GUARANTY CORPORATION, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., for Appellant. Marc B. Merklin, BROUSE & McDOWELL, Akron, Ohio, for Appellee.  **ON BRIEF:**  Israel Goldowitz, Susan E. Birenbaum, Kenneth J. Cooper, James J. Keightley, Willliam G. Beyer, PENSION BENEFIT GUARANTY CORPORATION, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., for Appellant.  Marc B. Merklin, Clair E. Dickinson, Joseph F. Hutchinson, Jr., BROUSE & McDOWELL, Akron, Ohio, for Appellee.

---

**OPINION**

---

RYAN, Circuit Judge.  We must decide in this appeal whether the lower courts erred in using a "prudent investor rate" to calculate a claim in a bankruptcy proceeding involving unfunded benefit liabilities for a defined benefit pension plan (DBPP) under the Employee Retirement Income Security Act of 1974 (ERISA).  We must also determine whether a claim for missed minimum funding contributions is entitled to a "tax" priority under 11 U.S.C. § 507(a)(7) (currently § 507(a)(8)).  We hold that the "prudent investor rate" is an appropriate valuation tool for a claim involving unfunded benefit liabilities in the bankruptcy context.  We also hold that a claim for missed minimum funding contributions is not entitled to a section 507(a)(7) "tax" status when a lien has not been imposed under 26 U.S.C. § 412(n)(4), due to the operation of the automatic stay, 11 U.S.C. § 362(a)(4), triggered by a Chapter 11 filing in bankruptcy court.  We must, therefore, affirm.

## I.

Under ERISA, employers are required to (1) pre-fund DBPPs by making an annual minimum funding contribution, which is the calculated present value of predicted future pension obligations incurred due to the participants' employment for that year, plus any past service obligations; and (2) insure the DBPPs with the Pension Benefit Guaranty Corporation (PBGC), a private governmental insurance corporation created under ERISA. *See* 29 U.S.C. §§ 1082, 1302. If a DBPP is terminated, the PBGC is required to pay benefits to beneficiaries of the DBPPs as they become due, even if the assets of the terminated plan are insufficient to cover such payments. The PBGC has a claim against the employer for any unfunded benefit liabilities it is forced to pay. An unfunded benefit liability is defined as the difference between the present value of the predicted future liabilities of the plan and the present value of the plan's assets. *See* 29 U.S.C. § 1301(a)(18).

The present case arose after the Copperweld Steel Company began missing its minimum funding contributions for three of its DBPPs in July 1993. Copperweld filed a Chapter 11 petition in bankruptcy court on November 22, 1993, in order to reorganize under the Bankruptcy Code. The PBGC filed an action in federal district court seeking involuntary termination of the three DBPPs, but the parties settled the action and the DBPPs were voluntarily terminated and the PBGC became the trustee of the DBPPs. At the time the DBPPs were terminated, the missed minimum funding contributions totaled $8,813,046.

Kathryn A. Belfance, the Chapter 11 trustee for Copperweld, initiated an action in bankruptcy court because of the disagreement over both the amount and the priority of the PBGC's claim. Both parties moved for summary judgment on both issues. The bankruptcy court granted summary judgment in favor of Belfance on most, but not all, of the issues in the case.

In order for all of Copperweld's debt to be dealt with under a Chapter 11 reorganization plan, it was necessary to reduce all of its liabilities to present value. The PBGC argued that the present value of its unfunded benefit liability claim was $49,658,702.19, using an investment return rate of 6.4% for the first 20 years and 5.75% thereafter. The bankruptcy court held that the investment return rates the PBGC used in determining the present value of the unfunded benefit liabilities would give the PBGC a "windfall," and elected to apply a "prudent investor rate," that which a reasonably prudent investor would receive from investing the funds. The parties stipulated a "prudent investor rate" would be a 10% return, resulting in a claim in the amount of $1,822,075.19.

The bankruptcy court also held that the portion of the missed minimum funding contributions attributable to normal costs was entitled to an "administrative" priority under 11 U.S.C. § 503(b)(1)(A), pursuant to this court's decision in *Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc.*, 126 F.3d 811 (6th Cir. 1997). The parties stipulated that $1,870,481 of the missed minimum funding contributions could be attributed to normal costs.

The PBGC appealed the bankruptcy court's order to the federal district court. The district court affirmed the bankruptcy court's judgment and concluded that no portion of the missed minimum funding contribution claim was entitled to priority as a "tax" under the Bankruptcy Code. The appeal to this court followed.

## II.

In an appeal from a bankruptcy court, we review the bankruptcy court's findings of fact for clear error and the district court's legal conclusions *de novo*. *See In re Highland Superstores, Inc.*, 154 F.3d 573, 576 (6th Cir. 1998). In this case all issues of fact were stipulated by the parties, so only legal conclusions are under review.

interrelationship between ERISA and the Bankruptcy Code in this case. The plain language of section 412(n)(4)(C) requires only the amount to which a "*lien* is *imposed* . . . [to] be *treated as taxes*." (Emphasis added.) According to facts stipulated by the parties, the lien imposed by section 412(n)(4) would have arisen 60 days following January 15, 1994 (the date upon which missed minimum funding contributions exceeded $1 million). However, Copperweld had already filed for Chapter 11 reorganization on November 22, 1993, triggering an automatic stay which prevented "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).

We hold that because a lien was never imposed on the missed minimum funding contributions pursuant to 26 U.S.C. § 412(n)(4), the PBGC's claim cannot be treated as a tax and, therefore, does not warrant a priority status under 11 U.S.C. § 507(a)(7).

## V.

For the foregoing reasons, the district court order affirming the bankruptcy court is **AFFIRMED**.

## IV.

We next address the PBGC's contention that the missed minimum funding contributions in excess of $1 million are entitled to a "tax" priority under 11 U.S.C. § 507(a)(7) (current version at 11 U.S.C. § 507(a)(8)), due to a statutory lien imposed pursuant to 26 U.S.C. § 412(n).

Section 412(n)(1)(B) provides that there shall be a lien in favor of the plan when the total amount unpaid and overdue exceeds $1 million. Furthermore, 26 U.S.C. § 412(n)(4), as it existed in 1993, states in pertinent part:

**(B) Period of lien**.
   The lien *imposed . . . shall arise on the 60th day following the due date* for the required installment . . . .

**(C) Certain rules to apply**
   *Any amount with respect to which a lien is imposed . . .* shall be *treated as taxes* due and owing the United States . . . .

26 U.S.C. § 412(n)(4) (emphasis added).

The district court thought it was necessary to examine the interplay between the ERISA and Bankruptcy Code provisions involved in order to determine whether Congress intended the "tax" in section 412(n)(4) to be given tax treatment in the bankruptcy context. The court first looked for an "explicit connection" between section 412(n) in ERISA and the Bankruptcy Code. Finding no "connector" between the statutes, the court then performed a "functional examination" to determine the nature of the "tax" in section 412(n) and concluded that the missed funding contributions were not entitled to priority as a "tax" under section 507(a)(7) in the Bankruptcy Code because the true nature of the tax at issue was not to fund a function of the United States.

We agree with the district court's conclusion that the claim was not entitled to a "tax" priority in the bankruptcy context, but do not think it was necessary to examine the

## III.

We consider initially whether the courts below erred in determining that the "prudent investor rate" was the appropriate valuation tool for calculating the present value of the claim for unfunded benefit liabilities. We conclude that they did not.

Under 11 U.S.C. § 502(b), the bankruptcy court must, upon objection to a claim, "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition." Therefore, the bankruptcy court must value present claims and reduce claims for future payment to present value, while also keeping in mind that a fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally. *See* 11 U.S.C. § 1123(a)(4). In order for the PBGC's claim to receive preferential treatment in a bankruptcy proceeding, there must be a clear authorization for such treatment from Congress. *See In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir. 1987).

The PBGC's claim arises under 29 U.S.C. § 1362(b)(1)(A), which provides, in pertinent part: "[L]iability to the [PBGC] . . . shall be the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan." The amount of the unfunded benefit liabilities is defined as:

the excess (if any) of—

   **(A)** the value of the benefit liabilities under the plan (determined as of such date on the basis of assumptions prescribed by the [PBGC] for purposes of section 1344 of this title), over

   **(B)** the current value (as of such date) of the assets of the plan.

29 U.S.C. § 1301(a)(18).

The PBGC argues that section 1301(a)(18) constitutes an explicit delegation of rulemaking authority that allows it to prescribe the assumptions used to value a terminated pension plan's unfunded benefit liabilities. The PBGC further argues that the valuation assumptions in its regulations are reasonable because they are calculated to replicate the market price of annuities sold by private insurance companies, and when employers terminate fully funded DBPPs voluntarily they are required to purchase annuities to cover the lifetime benefits of plan beneficiaries. *See* 29 C.F.R. §§ 2617.28, 2619 (recodified at 29 C.F.R. § 4041-4044 (1999)).

Belfance argues that the regulations the PBGC is relying on use exceptionally low interest rates in order to discourage employers from voluntarily terminating viable DBPPs; therefore, the regulations are inapplicable within a bankruptcy context when the employer is in financial distress. Furthermore, because the ERISA provision at issue, 29 U.S.C. § 1301(a)(18), conflicts with the Bankruptcy Code's mandate that same-class creditors be treated equally, 11 U.S.C. § 1123(a)(4), the ERISA provision must be subordinated.

This same issue was recently considered by the Tenth Circuit in *Pension Benefit Guaranty Corp. v. CF&I Fabricators of Utah, Inc.*, 150 F.3d 1293 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 2020 (1999). The *CF&I* court concluded that nothing in ERISA prevents the valuation of an unfunded benefit liability claim using the "prudent investor rate." *See id.* at 1301. To reach this conclusion, the *CF&I* court stated:

> 29 U.S.C. § 1301(a)(18) conflicts with provisions of the Bankruptcy Code, and, as the district court held, this conflict must be controlled by the Bankruptcy Code. Indeed, the very action in which the claim arises is, after all, bankruptcy. Congress has provided very precise contours of how claims that are administered in Chapter 11 are to be decided, and has pronounced as a cardinal rule that all claims within the same class must be treated alike. 11 U.S.C. § 1123(a)(4). That principle would be

> violated here if PBGC's interpretation of § 1301(a)(18) were adopted because PBGC's discount rate would apply only to it and not any other general unsecured creditor. Congress has made clear when ERISA conflicts with another provision of federal law, ERISA must be subordinated. 29 U.S.C. § 1144(d).

*Id.*

We are not entirely persuaded that the district and *CF&I* courts were correct in concluding that 29 U.S.C. § 1144(d), which provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States," requires that the ERISA provision, 29 U.S.C. § 1301(a)(18), be subordinated to the Bankruptcy Code. Section 1144(d), on its face, applies only to subchapter I of ERISA, whereas the definition of unfunded benefit liabilities, section 1301(a)(18), is found in subchapter III of ERISA.

However, we believe that the bankruptcy court's authority under 11 U.S.C. §§ 502(b) and 1123(a)(4) to determine the amount of claims in bankruptcy proceedings and treat creditors in the same class equally gives it the authority to value unfunded benefit liabilities claims using a "prudent investor rate." In *Raleigh v. Illinois Department of Revenue*, 120 S. Ct. 1951, 1957 (2000), the Supreme Court recently reiterated the principle that the validity of a claim is governed by nonbankruptcy law. While the *validity* of a claim might be a matter for nonbankruptcy law, bankruptcy courts have the statutory authority to determine the *allowability* and *amount* of the claim.

The PBGC's authority to promulgate regulations governing the valuation of unfunded benefit liabilities does not extend so far as to subordinate the authority of the bankruptcy courts to value claims in bankruptcy proceedings. In this case, the PBGC should be treated like any other unsecured creditor in the bankruptcy reorganization; therefore, the use of the "prudent investor rate" to value the PBGC's claim was appropriate.