In re RHODES, INC., et al., Debtors.

**Joel H. Dugan, as Liquidating Agent, Movant,**

v.

**Pension Benefit Guaranty Corporation, Respondent.**

Nos. 04–78434 to 04–78436.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 25, 2008.

Amy Edgy Ferber, John F. Isbell, Jonathan W. Jordan, Michelle Carter, Paul K. Ferdinands, Sarah Robinson Borders, W. Austin Jowers, King & Spalding, LLP, J. Robert Williamson, Scroggins and Williamson, Atlanta, GA, for Debtors.

Leroy Culton, U.S. Trustee, Atlanta, GA, for U.S. Trustee.

Israel Goldowitz, Charles L. Finke, Andrea M. Wong, Garth D. Wilson, C. Wayne Owen, Jr., Pension Benefit Guaranty Corporation, Washington, DC, for PBGC.

## CONTESTED MATTER

JAMES E. MASSEY, Bankruptcy Judge.

*INTERIM ORDER ON OBJECTION OF LIQUIDATING AGENT TO CLAIM OF PENSION BENEFIT GUARANTY CORPORATION*

Debtors in this Chapter 11 case and the Pension Benefit Guaranty Corporation ("PBGC") agreed during the pendency of this case to the "distress termination" of Debtors' defined benefit pension plan. The termination of the pension plan gave rise to a prepetition unsecured claim against Debtors in favor of PBGC pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") for the amount of unfunded benefit liabilities. PBGC filed claim no. 1032 for unfunded benefit liabilities totaling $11,649,600. Joel H. Dugan, as Liquidating Agent under the confirmed plan of the Debtors, objects to PBGC's claim on the ground that it is overstated and asserts that the Court can and should recompute the amount of the claim. PBGC contends that the amount of its claim is fixed by nonbankruptcy law and that the Court is not authorized by ERISA or the Bankruptcy Code to recompute it. The parties agree that the Court should resolve this threshold issue of the extent of the Court's power to recalculate the amount of PBGC's claim. The matter has been fully briefed. After careful consideration of the arguments of the parties and relevant case law, the Court holds that the Bankruptcy Code contains no provision that conflicts with sections 1301(a)(18) and 1362(b)(1)(A) of ERISA or that would otherwise empower the Court to recalculate the PBGC's claim.

A. *Computation of PBGC's Claim under ERISA.*

When a defined benefit pension plan is terminated in a "distress termination" or by PBGC pursuant to its powers, a contributing plan sponsor and a contributing sponsor's "controlled group" are liable to PBGC for "the total amount of the unfunded benefit liabilities" (as of the termination date) to all participants and beneficiaries under the plan, together with interest (at a reasonable rate) calculated from the termination date in accordance with regulations prescribed by the corporation." 29 U.S.C. § 1362(b)(1)(A). The term "amount of unfunded benefit liabilities" means "as of any date, the excess (if any) of—

(A) the value of the benefit liabilities under the plan (determined as of such date on the basis of assumptions prescribed by the corporation for purposes of section 1344 of this title), over

(B) the current value (as of such date) of the assets of the plan[.]"

29 U.S.C. § 1301(a)(18).

Section 1344 of title 29 deals with the allocation of assets of a plan among partici-

pants and beneficiaries based on such factors as the amount of mandatory contributions and the value of accrued benefits. Although section 1344 does not explicitly state that PBGC is to determine the value of benefits, the Liquidating Agent has not challenged the authority of PBGC to promulgate regulations concerning calculations required by that section. Section 1322(b)(4)(A) does explicitly provide that "[t]he actuarial value of a benefit, for purposes of this subsection, shall be determined in accordance with regulations prescribed by the corporation." 29 U.S.C. § 1322(b)(4)(A). Both of these sections refer to the same benefit. 29 C.F.R. §§ 4044.52–4044.75 contains PBGC's regulations concerning the assumptions and methods it uses to determine the value of benefits under a pension plan as to which it has assumed liability.

The method used by PBGC in determining the amount of unfunded benefit liabilities is complicated. Happily, there is a clear analysis of the method in *In re U.S. Airways Group, Inc.,* 303 B.R. 784, 788–89 (Bankr.E.D.Va.2003). In a nutshell and in general, PBGC obtains a quarterly survey conducted by a third party to determine current prices for single premium annuities charged by various insurance companies. Insurance companies do not publish the interest rates they use to determine such prices. PBGC averages those prices and then, working backward in effect, calculates the rates for the specified ranges of years that would result in the average prices for such annuities, using mortality assumptions stated in its 1983 General Annuity Mortality table. "The interest rate that comes closest to generating a cost matching the average reported cost from the survey is then adopted as the discount rate." *Id.* at 788–89. PBGC then determines the amount of unfunded benefit liabilities by reducing the amount of expected future benefits to present value using those calculated rates.

The parties sparred in their briefs over whether the rates were more properly described as interest rates or as discount rates. The PBGC argued in its initial brief that its "methodology results in the value of benefits in a terminated underfunded plan being equivalent to what an employer would have to pay to purchase annuities in the marketplace to complete a standard termination of the plan." "Response to Liquidating Agent's Objection to Allowance of Certain Claims," document no. 2763, p. 5. The bottom line is that for purposes of determining the amount of unfunded benefit liabilities, the aggregate amount payable to plan beneficiaries and participants over their expected lifetimes based on the 1983 General Annuity Mortality table is reduced to a smaller number to account for the fact that such payments are due in the future.

### B. *The Liquidating Agent's Approach to Computing PBGC's Claim.*

The Liquidating Agent contends that this Court should recompute the amount of PBGC's claim using a "prudent investor rate." It is not clear what the Liquidating Agent means by the "prudent investor rate." In one of the cases on which he relies, *In re Chateaugay Corp.,* 126 B.R. 165 (Bankr.S.D.N.Y.1991), the court there concluded that "the proper methodology for valuing a claim based on an obligation of the Debtors to make cash payments subsequent to the Filing Date requires an examination of the rate of return available to a reasonable, prudent private pension fund investor who invests in a 'prudent' portfolio." *Id.* at 177. The so-called "prudent investor" approach is described in the *U.S. Airways* case as a rate determined by the return that a "prudent" investor would likely obtain by investing assets in securi-

ties and bonds in a manner typical of large pension plans, such as by putting 60% of the assets in common stocks and the balance in bonds. *In re U.S. Airways Group, Inc.*, 303 B.R. at 789. Rates of returns on investments and discount rates for future liabilities may be related, but the Court has no basis to think that they are interchangeable. Hence, the Court's confusion about what methodology the Liquidating Agent is proposing.

It is sufficient for the purpose of this Order, however, to take note of the basic point of the Liquidating Agent, which is that in his view PBGC is likely to earn more on the assets of the pension plan turned over to PBGC than its method of determining the amount of unfunded benefit liabilities predicts. Hence, he asserts that the amount of its claim is overstated.

C. *Analysis.*

■ "Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). The Supreme Court recently reiterated the vitality of this rule in *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, ⎯⎯ U.S. ⎯⎯, 127 S.Ct. 1199, 1201, 167 L.Ed.2d 178 (2007). The parties do not disagree that this Court must follow *Raleigh* with respect to resolving the objection to the amount of PBGC's claim insofar as bankruptcy issues are concerned. What they disagree about is whether the Bankruptcy Code contains a provision that trumps ERISA as to the computation of the amount of PBGC's claim.

The Liquidating Agent contends that sections 502(b) and 1123(a)(4) reflect an equitable principle that like claims must be treated alike and that because PBGC's claim is inflated, that principle is violated, necessitating the recomputation of the claim. He further contends that pursuant to section 502(b), this Court may restate the amount of PBGC's claim because it involves future payments and has not been properly discounted to present value. The Liquidating Agent has reserved the right to object to the claim on other grounds.

PBGC responds with two arguments. First, it asserts that under *Raleigh*, general notions of equity such as a principle that like claims should be treated alike cannot be used to recompute its claim. Second, it contends that its claim is for a fixed amount and is not one for future payments; therefore, this Court may not change the amount of its claim using section 502(b). PBGC relies on the *U.S. Airways* decision in which the bankruptcy court held that PBGC's claim against the plan sponsor should be determined in accordance with its regulations.

1. *Whether Section 1123(a)(4) or a Principle Inferred from It Overrides ERISA.*

In support of his position, the Liquidating Agent relies on two circuit court cases: *In re CF & I Fabricators of Utah, Inc.*, 150 F.3d 1293 (10th Cir.1998), *cert. den.* 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999) and *In re CSC Industries, Inc.*, 232 F.3d 505 (6th Cir.2000). In those cases, the courts held that a bankruptcy court is empowered to adjust the amount of PBGC's claim as computed under section 1301(a)(18) of ERISA.

In the *CF & I* case, the Tenth Circuit decided that section 1301(a)(18) of ERISA conflicts with a policy in the Bankruptcy Code, stating:

Congress has provided very precise contours of how claims that are administered in Chapter 11 are to be decided,

and has pronounced as a cardinal rule that all claims within the same class must be treated alike. 11 U.S.C. § 1123(a)(4). That principle would be violated here if PBGC's interpretation of § 1301(a)(18) were adopted because PBGC's discount rate would apply only to it and not any other general unsecured creditor. Congress has made clear when ERISA conflicts with another provision of federal law, ERISA must be subordinated. 29 U.S.C. § 1144(d). *CF & I,* 150 F.3d at 1301. In the CSC Industries case, the Sixth Circuit relied heavily on the CF & I decision and also based its decision in part on section 1123(a)(4). It opined that in determining the amount of a claim pursuant to section 502(b), a court should "[keep] in mind that a fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally. *See* 11 U.S.C. § 1123(a)(4)," *CSC Industries,* 232 F.3d at 508, and that the bankruptcy court has "authority under 11 U.S.C. §§ 502(b) and 1123(a)(4) to determine the amount of claims in bankruptcy proceedings and treat creditors in the same class equally...." *Id.* at 509.

This Court respectfully disagrees with those courts concerning the relevance of section 1123(a)(4). Their reliance on section 1123(a)(4) was misplaced because that section has a very limited purpose that has nothing to do with the allowance of claims, confuses a "principle" of doubtful reach with a statute and, in the instance of the *CF & I* decision, misreads section 1144(d) of ERISA.

■ Section 1123 governs what a plan may and must provide. Section 1123(a)(4) states:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—

. . .

(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest[.]

(Section 1122 of the Bankruptcy Code governing the classification of claims in a plan provides that a plan may place a claim in a particular class only if it is "substantially similar" to the other claims in that class.) Although one purpose of sections 1122 and 1123(a)(4) is to insure equality of distribution, an equally, if not more, important purpose is to protect the integrity of the voting process in a Chapter 11 case. Voting on a plan is by class. Section 1123(a)(4) prevents a plan proponent from rigging the vote of a particular class by providing for more favorable treatment to a claim that by virtue of its amount controls whether or not the class accepts the plan. It is not a purpose of section 1123(a)(4) to insure that claims are computed correctly, and that section has nothing to do with the allowance of claims.

Debtors' confirmed Third Amended Plan provided for a class of general unsecured claims (Class 3) and defined "General Unsecured Claim" to mean any unsecured claim other than other defined types of unsecured claims. Third Amended and Restated Joint Plan of Liquidation, pp 11, 14. (Document No. 2059). Claims in Class 3, including PBGC's claim, were substantially similar because they were unsecured and were not included in any other class containing unsecured claims. Paragraph 3.3.3 of the confirmed plan provides that every holder of an unsecured claim will "receive a pro rata Distribution of any Liquidation Proceeds that remain in the Rhodes Estate after the payment and satisfaction" of specified other classes of claims and expenses. It treated every class member the same way. It did not provide that PBGC would receive a larger,

disproportionate dividend relative to other members of that class. Therefore, Debtors' confirmed plan in fact complied with section 1123(a)(4) and with Section 1122 with respect to all claims in Class 3, including PBGC's claim, which reveals the argument for revaluing PBGC's claim based on section 1123(a)(4) to be unfounded and without merit.

■ The statement of the *CF & I* court that a principle of equal treatment underlying section 1123(a)(4) is violated by allowing PBGC's claim raises that court's view of a "principle" to the status of a statute. This reasoning loses sight of the law that "[b]ankruptcy courts ... are limited to what the Bankruptcy Code itself provides." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. at 24–25, 120 S.Ct. 1951.

### 2. *Whether ERISA Extends to Bankruptcy.*

The Tenth Circuit's conclusion that section 1144(d) of ERISA mandates that ERISA be subordinated to other statutes is not correct because, as noted by the Sixth Circuit in *CSC Industries*, section 1144 does not apply to all of ERISA. *CSC Industries*, 232 F.3d at 509.

■ Another rationale for the decision in the *CF & I* case was that "29 U.S.C. § 1301(a)(18) defines the amount of unfunded benefit liabilities 'for purposes of this title [ERISA]' only. Therefore, its terms cannot extend to bankruptcy." *CF & I*, 150 F.3d at 1301. Because the court concluded that section 1301(a)(18) does not extend to bankruptcy, it did not give the deference it acknowledged would otherwise be due to agency determinations that carry the force of law. *Id.*

The flaw in the court's analysis was due to its misquoting the statute. The definition of the term "amount of unfunded benefit liabilities" in section 1301(a)(18) refers to "the value of the benefit liabilities under the plan (determined as of such date on the basis of assumptions prescribed by the corporation for purposes *of section 1344* of this title)." 29 U.S.C. § 1301(a)(18) (Emphasis added). The Tenth Circuit left out the words "of section 1344," thereby missing the point that Congress was directing PBGC to use the same assumptions to determine the amount of unfunded benefit liabilities that it prescribed for the calculations it is required to make under section 1344. Section 1301(a)(18) does not state or imply that its reach is limited only to ERISA.

### 3. *Whether This Court May Recompute the Amount of PBGC's Claim Pursuant to Section 502(b).*

■ A proof of claim filed in a bankruptcy case is deemed allowed unless a party in interest objects to it. 11 U.S.C. § 502(a). The first clause of section 502(b) provides:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that[a claim is disallowed in whole or in part pursuant to any of nine subparagraphs of section 502(b) ].

None of the exceptions provided in subsections (e)(2), (f), (g), (h) and (i) are relevant to the objection of the Liquidating Trustee. Nor does he rely on any of the nine subparagraphs of section 502(b). Instead, the Liquidating Agent, relying on the decisions of the Tenth and Sixth Circuits discussed above, argues that the power of a bankruptcy court to "determine the amount of such claim in lawful currency of

the United States as of the date of the filing of the petition" permits it to override PBGC's computation of its claim.

■ Section 502(b) is concerned with the extent to which a claim subject to an objection is "allowed," meaning the extent to which a claim will be eligible to share in the distribution, if any, of estate assets in accordance with other substantive provisions of the Bankruptcy Code governing distributions, including those dealing with priority of payment, subordination, and secured claims. Section 502(b) is not clear and unambiguous. *In re Oakwood Homes,* 449 F.3d 588, 596 (3rd Cir.2006). In determining the amount of a claim to which an objection has been made, a bankruptcy court must look in the first instance to the law that gave rise to the claim. This fundamental rule stated in *Raleigh* reflects the fact that the Bankruptcy Code contains no provision for determining the liability for, or amount of, a claim arising under non-bankruptcy law, except that the introductory clause of section 502(b) permits the bankruptcy court to restate the gross amount of a claim for future payments to the amount reflecting its value relative to claims presently due.

In arguing that the PBGC's claim is one that may be restated under section 502(b), the Liquidating Agent relies heavily on the decisions of the Tenth and Sixth Circuits mentioned above. The Tenth Circuit opined that "[t]o insure the relative equality of payment between claims that mature in the future and claims that can be paid on the date of bankruptcy, the Bankruptcy Code mandates that all claims for future payment must be reduced to present value. 11 U.S.C. § 502(b)...." *CF & I,* 150 F.3d at 1300. The Sixth Circuit also held that "the bankruptcy court must value present claims and reduce claims for future payment to present value...." *In re CSC*

*Industries,* 232 F.3d 505, 508 (6th Cir. 2000).

■ The statements that the bankruptcy court must reduce claims for future payments to present value are overly broad. First, as indicated above, the purpose of the introductory clause of section 502(b) with respect to claims payable in the future is to value such a claim as it would be valued in the marketplace relative to claims presently due in order to account for the time value of money. Discovering in the computation of a claim some reference to future payments does not necessarily justify a conclusion that the amount of the claim may be recomputed. Although one purpose of the introductory clause of section 502(b) is to place claims for future payments on the same footing as claims for present payments, it is critical to determine whether the amount of a claim thought to involve future payments already reflects its current value relative to claims presently due.

■ Second, claims with payment due dates in the future may not be reduced to present value if they bear interest. *In re Oakwood Homes,* 449 F.3d at 599–601. Although not directly relevant here, this exception to a rule that a bankruptcy court must reduce "all claims for future payments" to present value consumes the rule, because almost all claims for future payment bear interest.

■ A claim thought to involve future payments will nonetheless have a value equal to its stated amount if an entity other than the bankruptcy court has determined that amount and its decision binds the debtor. To illustrate, section 502(b) may not be used to collaterally attack the amount of a valid judgment, where the court rendering the judgment had jurisdiction over the parties and the subject matter and there is no issue of fraud or collu-

sion. "Where an issue has been previously litigated in the state court, the principle of res judicata precludes the parties from relitigating that matter in the Bankruptcy Court. The Bankruptcy Court may not reexamine those issues already determined by the state court in rendering its judgment." *In re Pitts*, 31 B.R. 90, 92 (Bankr. N.D.Ga.1983)(Drake, J.)(citing *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946)). *See Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2nd Cir.1987)(A bankruptcy court must give preclusive effect to a default judgment obtained in state court to the extent a state court would.)[1] Hence, a bankruptcy court may not reduce the amount of a judgment based on a claim for future payments, such as the claim of a retired former employee of the debtor for deferred compensation, on the ground that the trial court used a discount rate that was too low.

■■■ Similarly, the determination of the amount of a claim may be removed from the bankruptcy court if the contract calls for binding arbitration. *See In re Electric Machinery Enterprises, Inc.*, 479 F.3d 791, 797 (11th Cir.2007)("In general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding. *See Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 166 (2d Cir.2000)."). It would make no difference that the arbitration involved the determination of the amount of a claim for future payments without interest.

The claim of the PBGC computed pursuant to section 1301(a)(18) of ERISA is like a claim based on a judgment or an arbitra-

tion award. It is not necessary for PBGC to sue on such a claim to establish its amount. Indeed, the Liquidating Agent has not contended that outside of bankruptcy and without obtaining a judgment invalidating PBGC's regulations, Debtors could successfully challenge the amount of PBGC's claim solely on the ground that the claim is excessive due to PBGC's use of an inappropriate discount rate. It is highly doubtful such a challenge could be successfully made. 5 U.S.C. § 706; *see Lyons v. Georgia–Pacific Corp. Salaried Employees Retirement Plan*, 221 F.3d 1235, 1244–1245 (11th Cir.2000)("... agency regulations, like the one at issue here, are to be given deference 'unless they are arbitrary, capricious, or manifestly contrary to the statute.'"); *cf. Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.*, 215 F.3d 407, 419 (3rd Cir.2000) ("Establishing the amount of liability under section 1362 in the first instance, as the District Court explained, begins with an administrative-not judicial-procedure. See 1999 WL 680185, at *38–39 (citing 19 C.F.R. § 4068.3). Thus, whether or not WCI waived this argument, we conclude that the District Court did not err when it declined to fix the amount of WCI's liability.")

PBGC's claim is also like a judgment in that it constitutes a lien (albeit limited in its reach by section 1368 of ERISA) on the property of those liable if the liability is not paid after demand. 29 U.S.C. § 1368. (Such a lien could not have attached against Debtors' assets because they had already filed bankruptcy, 11 U.S.C. § 362(a), but the point is that the claim has already been reduced to a present

---

1. It is important to distinguish between determining the amount of a claim and disallowing a portion of the amount of a claim. For example, although a bankruptcy court may not recompute the amount of a claim based on a judgment that includes future payments of unearned interest, the portion that constitutes unearned interest may be disallowed. *See In re Holm*, 931 F.2d 620 (9th Cir.1991).

value in accordance with Congressional authorization.) If the claim could be sold, its value (collection issues aside) would be its face amount. The amount claimed is currently due and is therefore stated in U.S. currency as of the petition date. In other words, "[t]he distinction here is that the court is not simply valuing a contingent future loss." *In re U.S. Airways Group, Inc.*, 303 B.R. at 793. The liability for the stream of payments to be made in the future is the liability of PBGC to pension plan beneficiaries and participants; Debtors have no liability for future payments to pension plan beneficiaries and participants or to the PBGC. "Rather, Congress, by statute, has expressly given the PBGC a present right to recover an amount determined in accordance with the valuation regulation." *Id.*

In summary, the Liquidating Agent's argument that PBGC's claim is for future payments and that the amount may be adjusted by this Court fails from two vantage points of the problem. First, the claim is not one for future payments because the obligation to pay the claim is enforceable now and is not to be performed in the future. Second and more importantly, PBGC is authorized by law to make a determination of the amount of its claim that is binding on Debtors and therefore on this Court. The issue is not whether PBGC's claim reflects a proper discount rate for discounting the "value of benefit liabilities" but whether PBGC's claim already reflects present value that is binding on Debtors, such that the claim stands on the same footing of other claims presently due, leaving nothing for this Court to determine.

It follows that section 502(b) is not a vehicle that the Liquidating Agent may use to attack PBGC's claim. If it were otherwise, bankruptcy courts would likely adopt diverse methodologies for determining amounts of unfunded benefit liabilities that in turn would produce diverse results.

Such determinations would upset the Congressional scheme for uniform treatment of those liable for the amounts of unfunded pension liabilities but would not necessarily answer the administrative law question of whether the methodology used by PBGC is arbitrary and capricious. See 5 U.S.C. § 706.

If PBGC's methodology is not arbitrary and capricious, then its calculation of the amount of its claim is legally binding on Debtors, as it would be if the claim were being enforced outside of bankruptcy. The Liquidating Agent's objection to PBGC's claim is presented as a challenge to a discount rate that is too low. But at bottom, it is a challenge to the regulations pursuant to which the claim is computed, and that challenge cannot be made as an end run using section 502(b) as the ball.

For these reasons, the portion of the objection of the Liquidating Agent to the proof of claim of PBGC on the ground that this court has the authority too recompute the amount of its claim based on the first sentence of 502(b) and section 1123(a)(4) of the Bankruptcy Code is DENIED. This Order does not adjudicate any other ground on which the Liquidating Agent has objected or may object to claims of the PBGC.